**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

LAUREN CROWDER, individually and on behalf of similarly situated class members,

Plaintiff(s),

v.

ANDREU, PALMA, LAVIN & SOLIS, PLLC,

Defendant.
_______________________________________/

Case No. 2:19-cv-00820

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW Comes Plaintiff, LAUREN CROWDER, by and through her undersigned attorney, individually and on behalf of similarly situated class members brings this Complaint against Defendant ANDREU, PALMA, LAVIN & SOLIS, PLLC:

**I. Parties, Jurisdiction and Venue**

1. Plaintiff Lauren Crowder ("Plaintiff") is a resident of Cape Coral, Florida and has filed this civil action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.

2. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

3. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1337.

4. Defendant Andreu, Palma, Lavin & Solis, PLLC ("Defendant") is a Florida limited liability company.

5. Defendant's registered agent, Andreu, Juan G, Esq., is located at 815 NW 57 Avenue, Suite 401, Miami, Florida 33126.

6. Defendant is a debt collector as defined by §1692a(6) of the FDCPA because Defendant routinely uses the United States Postal Service for the collection of consumer debts and Defendant's principal purpose is the collection of consumer debts.

7. This Court has federal question jurisdiction and venue pursuant to 15 U.S.C. § 6104(f) which provides that "[a]ny civil action brought under subsection (a) in a district court of the United States may be brought in the district in which the defendant is found, is an inhabitant, or transacts business or wherever venue is proper under section 1391 of title 28."

8. Venue is proper in this District pursuant to 18 U.S.C. § 1391(b) because Defendant mailed the collection letter to an address within this District and Defendant routinely collects consumer debts in this District and Defendant sent the collection letter to Plaintiff in this District.

9. Venue and personal jurisdiction exist in this District pursuant to U.S.C. §§ 1391(b)-(c) and 1441(a) because Defendant, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

10. Venue is proper in this District pursuant to 18 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction within this District by virtue of the fact that it has conducted significant and continuous debt collection activities within this jurisdiction.

**II. General Allegations Related to the Subject Debt**

11. Plaintiff obtained credit (the "Subject Debt") from Comenity Capital Bank and incurred the Debt for personal and household expenses.

12. Plaintiff attempted to make timely payments on the Subject Debt.

13. However, due to unforeseeable financial hardships and personal distress, Plaintiff was unable to make timely payments on the Subject Debt.

14. Plaintiff fell in default status after she was unable to pay off the Subject Debt.

15. Plaintiff suffered anxiety and stress as a result of her being unable to pay off the Subject Debt.

16. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Defendant regarded her as a "person obligated or allegedly obligated to pay" the Subject Debt.

17. Defendant regards the Subject Debt as "arising out of a transactions in which" money and/or services were obtained by Plaintiff from a creditor where the money and/or services were primarily for personal, family or household purposes.

18. The Subject Debt is a "debt" as defined by FDCPA §1692a(5) because it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

**Count I – Individual Violations of §§ 1692e, 1692e(3), 1692e(10) and 1692f of the FDCPA**

19. Plaintiff incorporates Paragraphs 1-2, 4, 6, 11 and 16-18 into Count I of this Civil Action.

20. Defendant sent a letter to Plaintiff dated October 28, 2019 (hereafter the "Demand Letter" or "Letter") where the Demand Letter's letterhead identifies "ANDREU, PALMA, LAVIN & SOLIS, PLLC."

21. The Demand Letter lists Midland Funding LLC ("Midland") as the "Current Creditor" and states that "our law firm represents **MIDLAND FUNDING LLC** . . . ."

22. The Demand Letter states that "[MIDLAND] has placed your account with our office to collect the past due balance of $1,640.13."

23. A copy of the Demand Letter is depicted below on the following page:



ANDREU, PALMA, LAVIN & SOLIS, PLLC

ACCOUNT DETAILS
Firm File Number: 5013916
Original Creditor: COMENITY CAPITAL BANK
Original Creditor Account Number: XXXXXXXXXXXX6225
Current Creditor: MIDLAND FUNDING LLC
Date of Purchase: 12/29/2017
Charge-Off Balance: $1,640.13
Balance Due: $1,640.13

LAUREN CROWDER
1100 PONDELLA RD APT 510
CAPE CORAL FL 33909

**DEMAND LETTER** **DATE: October 28, 2019**

Dear **LAUREN CROWDER**,

RE: **COMENITY CAPITAL BANK IDEAL IMAGE**

*Please be advised that our law firm represents* **MIDLAND FUNDING LLC** who has purchased your account, previously with **COMENITY CAPITAL BANK**. Our client has placed your account with our office to collect the past due balance of **$1,640.13**.

*Unless you dispute the validity of this debt, or any portion thereof within 30 days of receipt of this notice, we will assume that the debt is valid.* If you notify us in writing within the 30-day period, that the debt or any portion thereof, is disputed, we will obtain and then mail you verification of the debt or a copy of a judgment, if one has been entered. If you request in writing within 30 days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

All payments are to be mailed to this office. Make any check payable to **Andreu, Palma, Lavin & Solis Trust Account**. Our firm's file number **(5013916)** should be included on all checks and correspondence to insure proper handling and credit to the above referenced account.

**Feel free to contact our Law Firm to discuss the account:**

**(877) 229-5972**

**ATTORNEYS:**

**Juan G. Andreu, Esq.**
*Licensed in FL
Richard A. Russell, Esq.
*Licensed in FL, GA, UT &NV
Giancarlo Olano-Lavergne, Esq.
*Licensed in FL & PR
Kristina Moehle, Esq.
*Licensed in FL, NJ & NY
Blake E. Oakes, Esq.
*Licensed in LA
**Of Counsel
**Connell A. Loftus, Esq.**
*Licensed in VA & DC
** Of Counsel

**OFFICE ADDRESS:**
887 DONALD ROSS RD
JUNO BEACH, FL 33408
**p. (877) 229-5972**
**f. (800) 391-2178**

**email:**
**HELP@AndreuPalma.com**

**Agents of the firm speak English and Spanish

A+ BBB ACCREDITED BUSINESS

IF YOU PREFER TO COMMUNICATE REGARDING THIS DEBT VIA EMAIL, SEND AN EMAIL TO HELP@ANDREUPALMA.COM

CALLS TO AND FROM ANDREU, PALMA, LAVIN & SOLIS, PLLC, MAY BE MONITORED AND RECORDED

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

*127090000FJ*

24. Midland is one of the largest debt buyers in the United States.

25. Upon information and belief, Midland works with Defendant on a regular basis which results in Defendant sending out hundreds of collection letters to consumers in the State of Florida on behalf of Midland.

26. As such, it stands to reason that Midland has assigned over forty debts to Defendant to collect against consumers like Plaintiff in the State of Florida within the past year where Defendant has sent similarly worded and formatted Demand Letters to other consumers within the State of Florida.

27. The Demand Letter indicates that Defendant is a law firm.

28. The Demand Letter includes the phrase, "DEMAND LETTER" and reflect that Defendant is a "law firm" and lists six (6) attorneys by name on the side margin of the letter:

29. The Demand Letter lists attorneys Juan G. Andreu, Richard A. Russell, Giancarlo Olano-Lavergne, Kristina Moehle, Blake E. Oakes, and Connell A. Loftus.

30. Defendant crafted the letter to suggest to a recipient that the Demand Letter was reviewed by one of the aforementioned attorneys.

31. In particular, Defendant drafted and formatted the Demand Letter in this manner to emphasize that it was sent by a law firm and that one or more attorneys reviewed the Demand Letter before it was sent out in order to exert pressure upon Plaintiff and other consumers like her.

32. Defendant drafted and formatted the Demand Letter in this manner because it knew that a recipient like Plaintiff would worry, more likely than not, that a lawsuit could be filed against her as a result of the fact that Defendant is a law firm.

33. Only four (4) of the above attorneys, Juan G. Andreu, Richard A. Russell,

Giancarlo Olano-Lavergne and Kristina Moehle, are listed as being able to practice law in the State of Florida.

34. Accordingly, only attorneys Juan G. Andreu, Richard A. Russell, Giancarlo Olano-Lavergne and Kristina Moehle could have reviewed Plaintiff's file before Defendant sent the Demand Letter to Plaintiff.

35. Neither of the attorneys who are eligible to practice law in the State of Florida signed the subject letter.

36. It is improbable that any of the four attorneys licensed to practice law in the State of Florida conducted a meaningful review of the Demand Letter and other similar letters sent on behalf of Midland and other clients because it would be impractical for attorneys Andreu, Russell, Olano-Lavergne and Moehle to review every consumer file and collection letter sent out by Defendant on behalf of Midland, one of largest debt buyers in the United States.

37. Upon information and belief, Midland regularly works with Defendant and Defendant sends hundreds of collection letters to consumers. It is impossible that Defendant's attorneys conducted a meaningful review of these letters because it would be impractical for a debt collector for one of the largest debt buyers in the country, Midland, to require an attorney to review every collection letter sent out on a daily basis.

38. On information and belief, Defendant allows its letterhead to be included in a virtually automated process on hundreds of such collection letters a week without engaging in a meaningful review of the underlying account prior to determining the veracity of the representations.

39. The automated nature of these letters is further demonstrated by the existence of a code on the bottom of the Demand Letter, as this code is likely included as a way to more

readily track the mass amount of collection letters Defendant sends to consumers on a daily basis.

40. By the sheer volume of collection letters Defendant sends on a daily basis, Defendant's attorneys could not have engaged in a meaningful review of each collection letter sent and the underlying account(s) associated with those letters.

41. The lack of meaningful review in the correspondence sent by Defendant is further exhibited by the multitude of complaints that have been filed against Defendant in federal courts throughout the country, as well as with the Better Business Bureau ("BBB").

42. These complaints evidence errors related to the collection of massive amounts of accounts by and through transmission of hundreds of collection letters and by and through the misprocessing of correspondence and misallocation of payments

43. For example, the following is a series of screen shots from the BBB, depicting complaints against Defendant relative to collecting on accounts that have been paid off:

**Complaint Type:** Billing/Collection Issues **Status:** Answered



09/24/2018

The office has continued to draft money from my account even after my account was paid in full. The monthly statements that I received from this company would never include a balance of what I owed and continued to draft monthly payments from my account even after I paid in full. I have left several messages and called several times to speak with the gentleman that handles my account, ***** ****** and he has yet to return my calls. When I would call from my own cell phone no one would answer my call but using a different number someone from the company would answer immediately each time. As soon as I would speak with someone they would hang up on me when they with "transfer" my call.

**Desired Outcome**

I would like my credit to be restored because I have paid off this Barclay credit card in full.

**Expand Complaint Details**

**Complaint Type:** Billing/Collection Issues **Status:** Answered



04/07/2017

The company attempted to collect a debt that was previously paid off. They filed a subpoena and had my bank account frozen for garnishment. The company has been contacting me for years regarding an account I paid in full in 2006. I advised the company of this multiple times in which they requested documentation. I advised them I would look for it due to the fact I had taken out a small loan to pay off multiple credit cards. I asked them to reach out to the original company and ask for payment verification which they stated they did not have it. Last Thursday I checked my bank account and found they had my bank account frozen. I called at least 5 times before I could get through and that was after I blocked my phone number. It was after the 8 or 9th call I was able to speak with ***** ********** manager. After discussing the financial crisis this left me in, I proceeded to leave work and go home in attempt to find my lost documentation. After a few hours I found my bank loa...

44. The complaints depicted in the above screen captures were made by consumers on the following dates: 09/24/2018 and 04/07/2017.

45. The above screen captures were obtained on November 12, 2019, from https://www.bbb.org/us/fl/miami/profile/collection-attorney/andreu-palma-0633-92013864/complaints.

46. These complaints highlight a problematic course of conduct (e.g., attempting to collect a debt upon an incorrect consumer, attempting to collect an incorrect amount, attempting to collect money exempt from collection, failing to provide sufficient information regarding the underlying debt, etc. etc.) which seemingly would or could have been avoided had Defendant's attorneys *meaningfully reviewed* the consumer's account information and related correspondence.

47. Sending form collection letters said to be from a law firm when no attorneys engaged in a meaningful review of the letter and associated accounts falsely implicates that such attorneys have reviewed the file and made the professional, considered determination to send the letter.

48. Debt collection letters should be sent after an attorney has *sufficiently reviewed* the accounts associated with debts – to prevent subsequent violations of the FDCPA and to back up the *representation* (both direct and implied) that an attorney has personally reviewed the collection letter and associated account before sending the letter.

49. Defendant engaged in unfair or unconscionable means to collect the Subject Debt and other similar debts for Midland where Defendant, a law-firm debt collector, falsely suggested to Plaintiff and others that its collection letters were sent after being reviewed by one or more of Defendant's attorneys where the volume of letters sent by Defendant for Midland precluded any notion of meaningful attorney review.

50. Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

51. Section 1692e(3) of the FDCPA prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

52. Section 1692e(10) of the FDCPA prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10).

53. As set forth in this Count, Defendant violated 15 U.S.C. §§ 1692e, e(3), and e(10) by sending the Demand Letter to Plaintiff in an attempt to mislead Plaintiff into believing that such letter was from, and reviewed by, Defendant's attorneys, when this is not the case.

54. Defendant violated 15 U.S.C. Sections 1692e, 1692e(3) and 1692e(10) by sending the Demand Letter to Plaintiff in an attempt to mislead Plaintiff into believing that such letter was reviewed by a specific attorney.

55. Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

56. Defendant violated 15 U.S.C. §1692f by sending the Demand Letter to Plaintiff in an attempt to unfairly mislead Plaintiff into believing that such letter was from, and reviewed by, Defendant's attorneys, where this is not plausible given the sheer number of letters that are reviewed by the attorneys in question.

57. Defendant's misleading correspondence caused Plaintiff to fear that Defendant, a law firm, would file a lawsuit against her if payment was not promptly made.

58. As a result of receiving the correspondence, Plaintiff was unfairly confused and mislead regarding Defendant's representations and examination of the subject debt.

59. Plaintiff has suffered concrete harm as a result of Defendant's illegal conduct, including but not limited to, stress, confusion, and emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

a. declare that the Demand Letter violates Sections 1692e, 1692e(3), 1692e(10) and 1692f of the FDCPA;

b. enjoin Defendant from using the Demand Letter in conjunction with any future collection;

c. award Plaintiff statutory damages of up to $1,000; and

d. award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k.

**Count II – Class Action Violations of**
**Sections 1692e, 1692e(3), 1692e(10) and 1692f of the FDCPA**

60. Plaintiff incorporates Paragraphs 1-2, 4, 6, 11 and 16-18 and Paragraphs 19 through 52 of Count I into this Count (II) which is being brought as a class action – where the above allegations apply to a class of similarly situated persons who were sent similar form debt

collection letters by Defendant on Defendant's letterhead on behalf of Defendant's client, Midland.

61. Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

62. Section 1692e(3) of the FDCPA prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

63. Section 1692e(10) of the FDCPA prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10).

64. As set forth in this Count, Defendant violated 15 U.S.C. §§ 1692e, e(3), and e(10) by sending the Demand Letter to Plaintiff in an attempt to mislead Plaintiff into believing that such letter was from, and reviewed by, Defendant's attorneys, when this is not the case.

65. Defendant violated 15 U.S.C. Sections 1692e, 1692e(3), 1692e(10) and 1692f by sending the Demand Letter to Plaintiff and over forty (40) similarly situated consumers who owed debts to Midland in an attempt to mislead Plaintiff and other consumers (with debts owed to Midland) into believing that the letters were meaningfully reviewed by a specific attorney.

66. In reality, the sheer number of letters sent by Defendant on behalf of Midland precluded Defendant's attorneys from meaningfully reviewing the subject collection letters.

67. Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

68. Just as Defendant engaged in unfair or unconscionable means to collect the Subject Debt, Defendant engaged in unfair or unconscionable means to collect debts from other

consumers in the State of Florida, where Defendant, a law-firm debt collector, falsely suggested to consumers like Plaintiff that its collection letters were sent after being reviewed by one or more of Defendant's attorneys where the volume of letters sent by Defendant for Midland precluded any notion of meaningful attorney review.

69. Defendant violated 15 U.S.C. §1692f by sending the Demand Letter to Plaintiff in an attempt to unfairly mislead Plaintiff into believing that such letter was from, and reviewed by, Defendant's attorneys, where this is not plausible given the sheer number of letters that are reviewed by the attorneys in question.

70. Defendant's misleading correspondence caused Plaintiff and others like her to fear that Defendant, a law firm, would file a lawsuit against her if payment was not promptly made.

71. As a result of receiving the correspondence, Plaintiff and others like her were unfairly confused and mislead regarding Defendant's representations and examination of the subject debt.

72. Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

73. Defendant's unfair, false, deceptive, and misleading collection practices created an unfair and/or unconscionable sense of urgency in Florida consumers like Plaintiff because the formatting of the letter in question unfairly and/or unconscionably suggested to Plaintiff and others like her that an attorney engaged in a meaningful review of the Subject Debt when that was not possible.

74. Defendant has sent more than forty (40) similar letters to consumers with addresses within this judicial district and the State of Florida.

75. The language utilized in Plaintiff's letter and the facts supporting this cause of action are typical of the claims of absent class members.

76. Common issues of fact and law related to the lawfulness of Defendant's review of the underlying debts as well as Defendant's conduct in drafting and sending the subject letters.

77. A class action is a superior way to litigate the legality of Defendant's conduct.

78. Plaintiff has been educated as to her rights under the FDCPA and she will zealously and adequately represent absent class members.

79. Plaintiff does not have any conflicts with the claims of absent class members.

80. Plaintiff is represented by counsel well-versed in the litigation of consumer claims and consumer class action claims.

81. The proposed class can be defined as:

> All persons with physical addresses from within this Judicial District who were sent a similarly worded Demand Letter by Defendant within one year of the filing of this Civil Action (or until Defendant modifies its conduct) where the creditor was listed as Midland Funding, LLC, and Defendant's records do not show any meaningful attorney review of the collection letters prior to their transmission.

82. The proposed class can be identified by Defendant's internal records.

83. For these reasons, a class action should be certified relative to the above claims.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

a. declare that the Demand Letter violates Sections 1692e, 1692e(3), 1692e(10) and 1692f of the FDCPA;

b. enjoin Defendant from using the Demand Letter in conjunction with any future collection;

c. certify a class of similarly situated Florida consumers who received a similar form collection letter to collect a debt owed to Midland;

d. award class members statutory damages; and

e. award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k.

**Plaintiff demands trial by jury.**

Dated: November 13, 2019

Respectfully Submitted,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq.
Florida Bar No. 1013947
Sulaiman Law Group, Ltd.
2500 South Highland Avenue
Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com
*Counsel for Plaintiff*