**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

LAUREN CROWDER, individually
and on behalf of similarly situated
class members

        Plaintiff,

v.                                                   Case No: 2:19-cv-820-SPC-NPM

ANDREU, PALMA, LAVIN &
SOLIS, PLLC,

        Defendant.
                                    /

## **OPINION AND ORDER**[1]

Before the Court is Defendant Andreu, Palma, Lavin & Solis, PLLC's ("APLS") Motion for Summary Judgment (Doc. 65). Plaintiff Lauren Crowder responded (Doc. 76); APLS replied (Doc. 80). The Motion is granted in part.

## BACKGROUND

This is a Fair Debt Collection Practices Act ("FDCPA") case. Specifically, this falls within a subset based on a "meaningful involvement" or "meaningfully reviewed" theory. The idea is defendant (usually a law firm) is liable because it sent a dunning letter on firm letterhead, implying that a

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

lawyer meaningfully reviewed the file. But a lawyer either didn't review the letter or simply glanced at it before mailing.

That's the theory; these are the facts. Crowder financed laser hair removal through a bank (the "Debt"). After about half of the sessions, she was unhappy with the results. So Crowder wanted to cancel the remaining treatments and get a refund. On that front, some back-and-forth efforts with the hair removal company and a call to the bank had no success. For a while, Crowder made payments on the Debt. Eventually, however, she defaulted.

The bank sold the account to a debt buyer (Midland Funding, LLC). Midland sent Crowder a letter before placing the Debt with APLS for collection and assessment for litigation.[2] After, APLS sent Crowder a form debt validation letter (the "Letter"). The Letter was on APLS letterhead and listed several firm attorneys. But no lawyer signed it. What's more, the Letter did not threaten suit or contemplate further legal action. That was the only communication from APLS to Crowder. Two weeks later, Crowder sued. The Complaint alleged FDCPA violations of 15 U.S.C. §§ 1692e, e(3), e(10), and f.

APLS seeks judgment for lack of standing and on the merits. As a threshold jurisdictional issue, the Court must consider standing first. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). Because the analysis

---

[2] This communication is not in the record despite the Court's warning (Doc. 82).

ends there, the Court need not reach the merits. *Gardner v. Mutz*, 962 F.3d 1329, 1338-40 (11th Cir. 2020).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION

Federal courts can only hear "Cases" or "Controversies." U.S. Const. art. III, § 2. From that limitation, the standing doctrine grew. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court." *Id.* In the process, standing ensures courts respect the separation-of-powers boundaries set out in the Constitution. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

To have standing, every plaintiff must show injury, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). These

3

ain't "mere pleading requirements." *Id.* at 561. Instead, standing "is an indispensable part of the plaintiff's case," so "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Id.* So when responding to summary judgment, a "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (cleaned up).

**A. Injury**

The parties dispute whether Crowder suffered an injury in fact. Because Crowder did not, she lacks standing.

Of the three standing elements, actionable injury stands atop the heap. *Spokeo*, 136 S. Ct. at 1547. Injury in fact means plaintiff experienced the "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. This injury must be (1) "concrete and particularized" and (2) "actual or imminent, not conjectural or hypothetical." *Id.* (cleaned up). The "bare procedural violation" of a statute is not enough, even if Congress prescribed a cause of action. *Id.* at 1549. So a plaintiff does not automatically have a concrete injury "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Frank v. Gaos*, 139 S. Ct. 1041, 1045 (2019) (citation omitted).

Regardless of any FDCPA violation, therefore, Crowder must show the Letter caused her a concrete harm. *Spokeo*, 136 S. Ct. at 1549. An injury is concrete if it is "*de facto*": "it must actually exist" and be "real," "not abstract." *Id.* at 1548 (cleaned up). Mainly, Crowder says she suffered emotional distress from the Letter. That harm was particularized.[3]

Some courts outside the Eleventh have been skeptical of similar psychological allegations. *E.g.*, *Pennell v. Global Tr. Mgmt., LLC*, 990 F.3d 1041, at *3 (7th Cir. 2021) ("Nor does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm."). Post-*Spokeo* decisions in this Circuit though are coalescing on a settled proposition that emotional distress from FDCPA violations can amount to a concrete injury under Article III. *Kottler v. Gulf Coast Collection Bureau, Inc.*, No. 20-12239, 2021 WL 529425, at *1 (11th Cir. Feb. 12, 2021); *Rivas v. Midland Funding, LLC*, No. 19-13383, 2021 WL 271983, at *2 (11th Cir. Jan. 27, 2021).[4] While anybody facing collection likely is afraid, anxious, or stressed, not every FDCPA plaintiff who alleges emotional distress has standing. *Valenzuela v. Axiom Acquisition Ventures,* LLC, No. 8:19-cv-2181-T-

---

[3] Crowder does not advance any risk-of-harm injury.

[4] *E.g.*, *Mraz v. I.C. Sys., Inc.*, No. 2:18-cv-254-FtM-38NPM, 2020 WL 7125629, at *1-2 (M.D. Fla. Dec. 4, 2020); *Proescher v. Sec. Collection Agency*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3432737, at *5 & n.2 (M.D. Fla. June 8, 2018), *report & recommendation adopted*, 2018 WL 3428157 (July 16, 2018); *see also Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691-92 (8th Cir. 2017).

5

60CPT, 2021 WL 62495, at *2 (M.D. Fla. Jan. 7, 2021) (holding unadorned frustration insufficient at the pleading stage). With little guidance, courts (including this one) have wondered at what point allegations on emotional distress become enough. But there's no need to decide where Article III draws its exact line in the sand for standing on emotional injuries. Wherever that may be, Crowder's on the wrong side.

Much of the alleged distress is irrelevant for Crowder's standing to sue APLS. Crowder "suffered anxiety and stress as a result of her being unable to pay off the" Debt. (Doc. 1 at 3). Such distress from default or dealing with the hair removal company, however, cannot support a concrete injury caused by APLS. What's more, the alleged harms for potential class members are beside the point. (Doc. 1 at 10-14). Crowder must have standing herself to maintain this suit regardless of any injuries hypothetical class members suffered. *See Gaos*, 139 S. Ct. at 1046.

With those bits disregarded, the Court turns to the alleged injury. According to the Complaint, the Letter caused Crowder "stress, confusion, and emotional distress," along with "fear" that APLS would sue if Crowder did not pay. (Doc. 1 at 10). The Court assumes that is enough to plausibly allege standing. But this case is beyond the pleading stage. We're at summary judgment—when courts up the ante to stay in the game. *Lujan*, 504 U.S. at 561. This distinguishes several cases on which Crowder relies. *Lamirand v.*

6

*Fay Servicing, LLC*, No. 2:20-cv-138-FtM-38MRM, 2020 WL 6134356 (M.D. Fla. Oct. 19, 2020); *Salermo v. Hughes Watters & Askanase LLP*, No. 4:19-cv-02791, 2021 WL 293311 (S.D. Tex. Jan. 28, 2021).

In short, Crowder presents insufficient evidence to show the alleged emotional distress was a concrete injury. The only evidence offered is Crowder's deposition. Yet she never testified to any facts showing concrete emotional distress from receipt of the Letter. Mostly, Crowder noted her fear of being sued for the debt. Many of those instances, however, related to the letter Midland sent Crowder. (Doc. 65-5 at 13-14).[5] Any emotional distress Crowder may have suffered related to the earlier Midland communication does not answer whether Crowder suffered emotional distress from the Letter. *See Jacobson v. Fla. Sec'y of State,* 974 F.3d 1236, 1253 (11th Cir. 2020) (noting "plaintiff's injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"). As to distress from the Letter, Crowder provided nothing except the general statement she was worried about a lawsuit. But at summary judgment, this broad concern about potential legal action over a defaulted debt does not rise to the level of a concrete injury.

---

[5] In response to summary judgment, Crowder (more accurately counsel) misrepresents her deposition. (Doc. 76 at 11). A sizable block quote details worry and wasted time purportedly from the Letter, going so far as to include bracketed alterations suggesting Crowder referred to the Letter. (Doc. 65-5 at 12). Yet the deposition makes clear the communication Crowder spoke of in this quote was from Midland—not APLS.

To start, Crowder's injury is conclusory—without factual support. The Court does not believe just saying the word "fear" or phrase "emotional distress" is enough to establish a concrete injury in fact at this stage. A plaintiff must plead and prove a concrete injury. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) (en banc). To do so, "the 'litigant must clearly and specifically set forth facts' to satisfy the requirements of Article III." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Federal courts cannot "imagine or piece together an injury sufficient to give a plaintiff standing when it has demonstrated none, and we are powerless to create jurisdiction by embellishing a deficient allegation of injury." *Id.* at 925 (cleaned up). In the past, this Court held a FDCPA plaintiff had concrete emotional injuries. But he provided "specific, sworn facts supporting the allegations of emotional distress." *Mraz,* 2020 WL 7125629 at *2 (noting plaintiff was "extremely offended and agitated" by a false dunning letter, along with worry over losing licensure for his job "which had strict reporting requirements for defaulted debts").

Crowder didn't do that. And she cites a grand total of zero cases in which a bare statement of fear or worry about a potential suit over a defaulted debt was enough to go forward. "Emotional harm means impairment or injury to a person's emotional tranquility." Restatement (Third) of Torts § 45 (Am. L. Inst. 2012). There must be something from which the Court can conclude

8

Crowder's alleged injury is "real, and not abstract." *Spokeo*, 136 S. Ct. at 1548. Any number of facts might do the trick (e.g., loss of sleep or inability to concentrate). *See Rivas*, 2021 WL 271983, at *2. But with just "the conclusory statement that a statutory violation caused an injury," there is no standing. *Muransky*, 979 F.3d at 928.

Here, that is especially problematic. Crowder's concern about a lawsuit started months before the Letter arrived; it started with the Midland letter. Yet Crowder never points to a single fact suggesting mental anguish from the Letter. Rather, all Crowder testified to was the general worry a lawsuit might follow her default on the Debt: a concern she had all along. A recent case is instructive. *Frank v. Autovest, LLC*, 961 F.3d 1185 (D.C. Cir. 2020). There, debtor alleged "stress and inconvenience" from a debt collector's lawsuit. *Id. at 1188*. But "she never connected those general harms to the" FDCPA violations, so debtor lacked standing. *Id.*

Through briefing, counsel tries to save the wanting testimony. But those efforts come up short. Crowder contends her general confusion over the Letter supports standing. Not so. Confusion—on its own—is not an injury in fact. *E.g.*, *Cooper v. Atl. Credit & Fin. Inc.*, 822 F. App'x 951, 955 (11th Cir. 2020) ("All [plaintiff] says, at most, is that she was confused, but in this context, her asserted injury of confusion was 'conjectural' or 'hypothetical,' because she has not alleged any actual harms that arose from her confusion." (quoting *City of*

9

*L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983))); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020) ("But the state of confusion is not itself an injury."). Like *Cooper*, Crowder failed to point to any harm resulting from confusion over the Letter.

What's more, many of Crowder's highlighted concerns over the Letter revolved around what she thought were legal requirements—largely based on work some probate lawyer did years ago. For instance, Crowder took issue because the Letter was unsigned by a lawyer. Nothing required a signature. But Crowder said lawyers must sign legal documents, so the Letter concerned her. Likewise, based on how the probate attorney billed, Crowder thought an APLS lawyer should have spent thirty minutes to an hour reviewing the Letter. And because the Letter looked like a form, cut-and-paste communication, she thought APLS didn't spend time meaningfully reviewing it. These (and related statements) are meaningless for Crowder's alleged injury as they say nothing about emotional distress. Rather, they're Crowder's musings on what she thinks lawyers should do to satisfy the meaningful review requirement. Even if these were FDCPA violations, a plaintiff taking mere offense over a statutory violation is not a concrete injury. *E.g., Trichell*, 964 F.3d at 1000 ("And while a recipient may take offense that a private party has violated the FDCPA, that is akin to taking offense that the government has

violated other statutes—an injury that is canonically abstract as opposed to concrete.").

In a meaningful review case, the emotional harm usually relates to worry, fear, or intimidation over a lawyer's apparent involvement and implied opinion on the validity of a debt. *E.g.*, *Gonzalez v. Kay*, 577 F.3d 600, 604 (5th Cir. 2009) ("A letter from a lawyer implies that the lawyer has become involved in the debt collection process, and the fear of a lawsuit is likely to intimidate most consumers.").[6]  Confusingly, however, Crowder's mindset was just the opposite.  Crowder was concerned the Letter was a copy-and-paste job in violation of the FDCPA.  In other words, Crowder was not concerned a lawyer reviewed the Letter; she took offense over her suspicion a lawyer didn't (or at least didn't for very long). (Doc. 65-5 at 20 ("It doesn't looked like [the Letter] was reviewed when it was sent to me, and that was my chief concern with it, if it was reviewed, by how long, because, again, it looks like it's pretty copy-pasted." (errors in original)); Doc. 65-5 at 16-17, 19).

Nor does anything else help show an injury.  Consider how the Letter did not identify the lawyer who reviewed the account.  Crowder said this was a problem because she wouldn't know what lawyer to call and discuss the Debt.

---

[6] Worry over attorney involvement can be broader than specific fear of a lawsuit. *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1364, 1366 (N.D. Ga. 2015).

11

Yet Crowder neither tried to call APLS nor testified on wanting to, so this is a red herring. Similarly, Crowder's confusion and anger over receiving the Letter—rather than her attorney—falls flat. (Doc. 65-5 at 26). As explained below, this is not traceable to APLS. Even if it were, this again amounts to general offense over a FDCPA violation. It is not testimony supporting a concrete emotional injury.

As explained, Crowder failed to carry her burden to show a concrete injury. She argues *Trichell* is not a "silver bullet to save debt collectors from FDCPA violations where emotional distress is alleged." (Doc. 76 at 10). Crowder's right in a general sense—*Trichell* says little about mental anguish. But she's wrong this strawman argument carries the day because the converse is true. Emotional distress is not some unassailable allegation bestowing standing on any FDCPA plaintiff sharp enough to utter the phrase. Article III's limitations aren't hollow tokens brushed aside by magic words accompanying a statutory violation. *E.g.*, *Muransky*, 979 F.3d at 925 ("And statutory violations do not—cannot—give us permission to offer plaintiffs a wink and a nod on concreteness."). FDCPA might sanction strict liability, *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011), but Article III does not. To be concrete, a plaintiff's emotional distress from statutory

12

violations must be "real" and "actually exist."[7] *See Spokeo*, 136 S. Ct. at 1548. Because all that Crowder offers is her deposition—which doesn't provide a single fact supporting emotional distress in over 100 pages—the alleged injury is not concrete.

Even if it were, Crowder relies on a hypothetical, future injury. In other words, Crowder's fear was not an injury in fact. *Lujan*, 504 U.S. at 560 (Harm must be "actual or imminent, not conjectural or hypothetical." (cleaned up)). The Supremes "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact." *Clapper*, 568 U.S. at 409 (cleaned up). So "allegations of *possible* future injury are not sufficient." *Id.* (cleaned up). For that reason, "A prospective injury that is contingent on the choices of a third party is less likely to establish standing." *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1202 (11th Cir. 2018).

The Letter must be understood in context. It followed a communication from Midland. When Crowder received that letter, she thought Midland was suing. (Doc. 65-5 at 12). So Crowder hired a lawyer to defend her against a possible lawsuit. Apparently, the message reflected Midland would "transition [Crowder's] account into the attorney review process after" a certain date. (Doc. 65-5 at 12). When the date came and went, Midland did just that—

---

[7] This does not suggest emotional distress must be tangible or significant.

transferring the account to APLS. After receiving the Letter, Crowder was afraid APLS would sue her over the Debt. Even so, a lawsuit was not certainly impending. Crowder feared APLS "would file a lawsuit against her *if payment was not promptly made*." (Doc. 1 at 10) (emphasis added). When she received the Letter, Crowder still hoped to settle the Debt for a lesser amount. (Doc. 65-5 at 20-21, 26). What's more, Crowder was already represented by counsel, so she contacted him when the Letter came in. (Doc. 65-5 at 18). And even a week after receiving the Letter, counsel knew no legal proceedings were underway. (Doc. 65-5 at 152) (Counsel "has not been expressly authorized to accept service of any lawsuit which [APLS] *may* file against" Crowder. (emphasis in original)).

In short, a lawsuit was not certainly impending when Crowder sued. Nothing in the Letter suggested APLS was about to sue. Rather, the Letter was a standard debt validation notice. APLS identified itself as a debt collector trying to collect the Debt—not a law firm preparing for litigation. The Letter threatened no other action nor contemplated legal proceedings. It simply sought to validate the Debt. And that was the only communication from APLS to Crowder. Best the Court can tell, the Midland letter did not threaten suit either. It just stated the account would transition to lawyer review. So Crowder's fear of a lawsuit when she received the Letter was simply worry about a hypothetical future injury.

14

In response, Crowder points to evidence revealing APLS placed her account in its "review for suit queue." (Doc. 76 at 16). That said, this is immaterial for standing. Standing must exist "when the suit was filed." *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734 (2008). So this information Crowder learned during the case cannot support her fear at the time of suit. *E.g.*, *Charles H. Wesley Educ. Found., Inc. v. Cox,* 408 F.3d 1349, 1352 n.3 (11th Cir. 2005) (standing "is not altered by events unfolding during litigation"). Even if APLS' designation were relevant, it still does not show litigation was certainly impending. According to unrebutted evidence, APLS' suit queue "means that the file will ultimately be reviewed by the firm to determine if litigation is proper under the firm's suit guidelines." (Doc. 65-1 at 4). At most, therefore, APLS was just considering whether to sue. Additionally, Crowder had ways eliminate any imminent threat of suit. She could have paid the Debt; she could have disputed the Debt; or she could have tried to settle the Debt.[8] In other words, a lawsuit—while possible—was not certainly impending.

The same goes for the unpled theory of a wasted time injury. For the first time in summary judgment briefing, Crowder raised this issue. Again, there are traceability problems addressed below. All the same, "Where a

---

[8] While it's a risky proposition, debt collectors can technically sue during the validation period. *See Ellis v. Solomon & Solomon, P.C.,* 591 F.3d 130, 136-37 (2d Cir. 2010). Even so, a debtor can stop a lawsuit (at least temporarily) by disputing the debt. *E.g.*, *Taylor v. Health Williams, L.L.C.,* 510 F. Supp. 2d 1206, 1213-14 (N.D. Ga. 2007).

15

'hypothetical future harm' is not 'certainly impending,' plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves.'" *Muransky*, 979 F.3d at 931 (quoting *Clapper*, 568 U.S. at 416). So any time Crowder spent researching APLS about a hypothetical future harm does not confer standing.

Finally, Crowder specifically disclaimed *all* actual damages—including any emotional distress and lost time. When asked what damages she suffered, Crowder answered: "It's just statutory damages." (Doc. 65-5 at 21). Likewise, the Complaint does not seek actual damages. (Doc. 1 at 10). To be sure, plaintiff need not prove damages to establish standing. *Mraz*, 2020 WL 7125629, at *2. All the same, considering Crowder's other testimony, the fact she (and counsel) conceded there were no actual damages simply buttresses the Court's conclusion. *See Trichell*, 964 F.3d at 1000.

At bottom, the record amounts to no more than stray conclusory statements on emotional distress and offense taken over bare FDCPA violations. As far as Article III is concerned, there is no such this as an "anything-hurts-so-long-as-Congress-says-it-hurts" injury. *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018). Because Crowder failed to show she suffered an injury in fact, she lacks standing.

### B. Causation (or Traceability)

Even if Crowder suffered an injury, she has a separate standing problem. Any injury was not traceable to the alleged FDCPA violations. *See Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855 (6th Cir. 2020).

Article III demands an injury that is "fairly traceable to the challenged conduct of the defendant." *Spokeo*, 136 S. Ct. at 1547. Traceability means a "causal connection between the injury and the conduct complained of." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). This showing need not rise to the level of proximate causation, so even an indirect injury can satisfy the requirement. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019). But the injury must result from the conduct of defendant—not "some third party." *Lujan*, 504 U.S. at 560 (citation omitted).

While the parties don't address it, the Sixth Circuit recently decided a doppelgänger case. *Buchholz*, 946 F.3d 855. There, a law firm sent debtor formulaic collection letters signed by an attorney. Nothing was wrong with the letters. Nor did they threaten suit. Still, debtor felt anxiety over suit "if prompt payment was not made" and brought a meaningful review action. *Id.* at 860. On those facts, debtor lacked standing because any anxiety he felt was his doing. It was debtor's worry about the consequences of not paying his debt, rather than the firm's conduct, that caused the distress.

The result here is the same. Any fear Crowder had of APLS suing did not result from the Letter. Instead, it was Crowder's own default and concern over the consequences that caused any distress. Likewise, any wasted research time cannot be attributed to APLS. Because Crowder fails to allege or support any injury fairly traceable to a meaningful review issue, she lacks standing.

First is Crowder's worry about a lawsuit. Any distress suffered is not traceable to attorney review (or lack thereof). While Crowder disagreed with the hair removal company not providing a refund, she never disputed the Debt with Midland or APLS. And in court, Crowder admitted she incurred the Debt then defaulted—owing a balance of $1,640. (Docs. 1 at 2-3; 65 at 3; 76 at 18). Like *Buchholz*, Crowder's injury was solely traceable to the consequences of her default. No amount of attorney review could have ameliorated Crowder's concern. The Debt was not disputed and—before sending the Letter—APLS did not receive word Crowder had counsel. So even if a lawyer spent hours reviewing every scrap of paper in the file, the Letter still would have been sent to Crowder. Any lack of meaningful review, therefore, did not cause (directly or indirectly) a psychological injury Crowder suffered.

Second, the unalleged wasted time theory fails too. Crowder spent time researching if APLS sent others validation letters after they disputed debts and retained counsel. (Doc. 65-5 at 25-26). But those are not the FDCPA violations at issue. Rather, the issue is whether there was meaningful attorney

18

Case 2:19-cv-00820-SPC-NPM   Document 84   Filed 04/09/21   Page 19 of 20 PageID 1934

review. So the harms must be traceable to those violations, not some other ones, for this analysis.[9]

What's more, if that wasted time is traceable to anyone, it's directly traceable to Crowder and her counsel. Again, nobody disputed the Debt to Midland or APLS. Nor did either know Crowder retained counsel until after she received the Letter. So it was impossible for APLS to know about the perceived errors Crowder researched. As Crowder put it, she "would have to take that up with [her counsel] about why [information] was not communicated." (Doc. 65-5 at 26). Any wasted time, therefore, was a self-inflicted injury not caused by APLS. *Swann v. Ga. Sec'y of State.*, 668 F.3d 1285, 1288 (11th Cir. 2012) (stating "a controversy is not justiciable when a plaintiff independently caused his own injury"); *Wasser v. All Market, Inc.*, 329 F.R.D. 464, 470-71 (S.D. Fla. 2018) (collecting cases).

In the end, any injury Crowder suffered was not traceable to APLS' challenged conduct. So she lacks standing.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. 65) is **GRANTED in part**.

---

[9] For that reason, time Crowder spent researching unrelated issues (like zombie debt) or working on this lawsuit don't help her cause. (Doc. 65-5 at 27).

19

(1) This action is **DISMISSED without prejudice** for lack of standing.

(2) The Clerk is **DIRECTED** to enter judgment, terminate all pending motions or deadline, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on April 9, 2021.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record